Good morning, Your Honors. May it please the Court, Jonathan Libby appearing on behalf of the appellant and cross-appellee Henry Sainez. Unless the Court has a particular issue it would like me to address, I would like to begin by discussing the unconstitutional stop of Mr. Sainez, which should have led to suppression of the evidence. Deputy von Arx lacked reasonable suspicion to stop Mr. Sainez at any point. First, driving your wife's Honda at 1.40 in the morning is not a reasonable suspicion to stop a vehicle. Second, none of the alleged traffic violations, which the officer cited, in fact, occurred. Therefore, they could not have served as a basis to justify the stop. First, the officer says that he witnessed Mr. Sainez making a right-hand turn using his turn signal just not within 100 feet of the intersection as required by the California Vehicle Code. Let me ask you, if you're right, would this be the rule, then, if a cop is behind you and turns on the light and siren, and you think back and you say, gee, I wasn't speeding, I didn't make any improper turns, I didn't blow any signs, so to hell with it, I'm not going to stop, is that the rule? Well, Your Honor, I just go stop, get your ticket, and tell it to the judge. The concern, of course, is would that not lead to police officers willy-nilly pulling people over for no basis and subjecting individuals to an unnecessary stop, an illegal stop, when there is no basis. Now, I certainly understand Your Honor's point, but I think there has to be a balance, and on balance, I think you have to uphold the citizen's rights. So under your rule, if you think you didn't commit any traffic violation, you don't have to stop for the cop? Well, here, of course, Mr. Sainez did eventually stop. Pardon me? He did eventually stop. Yeah, after it's unclear how long the pursuit took place, was it several miles or? I think it was one to two miles, it's not entirely clear. Was he arrested for failing to stop? He was not. All he was ultimately charged with was driving without a license, and he was charged with driving without a license after the stop had occurred, and he was asked to produce a driver's license, and he was only able to produce a California identification card, and they ran his name and determined he was driving without a license, and so that's when they decided to arrest him. And that's what he, in fact, was charged with. Then they searched, they decided to impound the vehicle and conduct an inventory search of the vehicle, and that's when they found the gun, and he was ultimately charged with possession of the gun. The point of my question was, doesn't the failure to stop when the police officer activates the lights and siren, doesn't that provide probable cause to at least investigate, reasonable suspicion to investigate why the driver is not pulling over? Well, Your Honor, I think if – it's a difficult question. Again, all I can say is I think the Court has to balance that concern, and I certainly recognize that's a concern. We obviously don't want anarchy, but on the other hand, that needs to be balanced against the recognition of constitutional rights that an individual has. And if you say that, well, you have to stop whenever an officer puts on his lights, even when that's not a lawful order to stop, then that stands the Fourth Amendment on its head, because then you're saying an officer always has the authority to stop someone, and that's simply not the case. And it was not the case here. Deputy Von Arch did not have justification to stop him for any vehicle code violation. You know, and there are certainly – you know, it was late at night, and individuals can have safety concerns, and he pulled over at the first opportunity that he felt comfortable pulling over, but he did, in fact, ultimately stop, and it's not as if he was being followed by the deputy. Apparently, without speeding up, he was – Los Angeles slow-speed chase that we hear about in Arizona from time to time. Well, again, I'm not even sure that I would characterize this as necessarily a chase. He merely was following behind Mr. Sainez. With the stuff activated? It did indicate – the deputy did indicate that he had put on his lights and sirens. But, again, I don't believe that the statute that requires submission to a lawful order applies here, because it was not a lawful order. There was no basis to stop him. The statute that says that you're supposed to yield to an emergency vehicle with lights and sirens, there are a couple problems there. That's not intended to apply to a situation where you're trying to pull someone over. It's where you're intending to pass someone, and that certainly wasn't the case here. The statute also requires that the lights could be viewed by – from at least 1,000 feet ahead. There was no evidence to record to, in fact, prove that that, in fact, occurred. And what we're left with is that there was simply no basis to stop Mr. Sainez. The government also then cites to a couple of statutes the blocking the sidewalk after he stopped and driving under the influence. Of course, again, he was not charged with either of those offenses, and they occurred after he had stopped, after he had submitted to the show of authorities. So certainly they cannot serve as any basis in calculating whether there was reasonable suspicion to stop. Those purported – those alleged violations occurred after the stop. Well, let's talk about the expressed items that supported the probable cause to arrest – I mean, to stop in the first place. First of all, it has to be reasonable suspicion, right? Correct. Yeah. So there's two things. There's the fact that it was a Honda. Yes. And it's believed that Hondas are stolen, or it was believed by this police officer. That was the officer's belief. There's no evidence that that is the fact of the case. Well, I did some outside-the-record research on that. And, in fact, there's great dispute on that fact among the literature. But the second one was the registration, right? Now, why isn't that sufficient, that it was clear that the car was not clearly registered to the person who was driving it? Well, because, again – because men drive their wives' cars. It's a common occurrence, and there's nothing unlawful about that. And it's not sufficient to – you know, Mr. Cohen, who represented him at trial, noted to the Court that the night before this pressure hearing, he was driving home late at night from the office in his wife's Honda. You know, would it have been okay to stop him? And of course not. There was no basis to find reasonable suspicion to stop a vehicle. There was no reasonable suspicion of criminal activity. Is it enough for the officer to follow? Sure. But conducting a stop based on that absolutely is not sufficient, because it's not reasonable to believe that a crime had taken – When do you think the stop occurred? When did the stop actually occur? Well, he submitted to the show of authority once he pulled into the driveway. So the stop at the earliest occurred in the driveway? Yes. And the car was illegally parked at that time? Well, no. It was not – well, it was partially blocking the sidewalk, according to the officer. However, that was caused by the submission to the show of authority. He pulled there in order to stop. The officer was pulling him over, and that's where he pulled over. He then got out of the car. He didn't pull into the driveway. He pulled at the edge of the driveway, and that was the stop. And the statute, in fact, that addresses blocking of the sidewalk, in fact, says it was done so in response to police pulling you aside. And that's, in fact, what took place here. So that, in fact – blocking the sidewalk was after the stop had occurred. The stop was when he pulled in. That's an element of control by the officer. In other words, simply pulling over doesn't constitute a stop. Yes, it does, Your Honor. Pulling over an individual – If the officer does anything? If an officer has pulled you over, that is a stop. That is – it's a stop, Your Honor. I mean, I'm not sure how else to describe it. He's not free to leave until the officer says he's free to leave. I see a question on the sentencing. The judge departed downward in criminal history citing the age of the principal conviction of concern. Which conviction was that? That was the 1990 conviction. Why was that the principal conviction? Because that was the only violent felony. Okay. None of the other convictions were, in fact, violent felonies that qualified for the sixth level. Was the 99 incident a misdemeanor? The 99 incident was a misdemeanor. Yes, Your Honor. But that also made possession of the firearm unlawful, didn't it? Yes, Your Honor. So, in other words, that's what he was charged with was unlawful possession of the firearm. Correct. And that misdemeanor qualifies him for that felony. It qualified for the felony conviction. It, however, did not qualify for the six-level enhancement he received under the sentencing guidelines. The six-level enhancement was based on the fact that it was a prior violent felony conviction. If he had not had that prior violent felony, then his sentence would have been six levels less. And I see my... You're over time, but we'll give you a minute on rebuttal. Thank you, Your Honor. Thank you very much, Mr. Libby. May it please the Court. I'm Mike Ruffello on behalf of the United States. Your Honors, on the seizure issue, it's clear under the case law that the relevant time for this Court's analysis is whether there was reasonable suspicion at the time that the deputy detained the defendant, sort of at the end of the whole process, not at the initial time that he first thought about detaining the defendant. Once that proposition is recognized, this Court only needs to find one type of reasonable suspicion during this whole process, and any questions about the other possible ones are sort of academic. But do you agree that the stop was when Sinez pulled into the driveway? No, Your Honor, not exactly. The time, I believe, is when the deputy detained the defendant. Wasn't that when he stopped the car in response to the deputy's lights? I guess it was not a siren. It was just lights. Well, respectfully, Your Honor, I don't think so, and that comes, for example, from the Santa Maria Hernandez case from this Court, which says that one who flees upon a show of authority is not seized until he or she is physically apprehended. So because he didn't stop right away, it's not clear from the objective facts that he had submitted to authority until the officer actually came and detained him. Until then, one doesn't know whether he's walking away, trying to go into the house or not, and there's certainly no testimony on that. But even if – so it's for that reason that I believe that the sidewalk violation and the drunk driving violation are – Are the suspicion? Well, those are properly considered. Wait a minute. Okay, well, let's take what the police officer said. He said that it was a Honda, and he thinks that Hondas are frequently stolen. That was his first basis. That was his first basis, yes. Okay. His second one was it was registered to a woman and it was a man driving. Do you – are you arguing that those are reasonable? Well, he did not, respectfully, decide to stop him until he had obtained both those things, plus he had seen the initial turn violation. That wasn't a turn violation because there was no other traffic on the road. Well, I explained it. That's when he decided to follow the defendant and stop him. This Court – and I do not think that there was reasonable suspicion at that time based on the Honda and the registration. However, when one asks to that, the failure to pull over over the course of a couple of miles and through a lot of turns, you get into a situation that's a lot like the Smith case from this Court, which is Judge Silverman's opinion, which is a defendant was seen peering into a stolen van. That's all that was seen at that point before the pursuit of him started. And there was conceivably in that case no reasonable suspicion, but this Court found that after a pursuit, because the defendant was not stopping to show authority, that that was enough to have reasonable suspicion that some sort of criminal activity was afoot. So what I'm following – what I'm getting from your argument, I just want to – it's sort of the converse of the role that was being discussed earlier, is if a police officer has no reasonable suspicion, maybe it's just that it's, you know, someone who looks to the police officer like a gang member driving around at early hours of the morning, but he has no reasonable suspicion under the law. All he has to do is turn on his lights, and if the person who he happens to be following is perhaps thinking, well, I want witnesses, because that's what a lot of people think in Los Angeles. So he doesn't speed. He doesn't change his course. He doesn't try to get rid of the police officer. He just drives to a place where his friends are sitting around. That's okay. That's constitutional. First of all, that's an independent – Because he's not submitting immediately, in your view, is reasonable suspicion. Yes, when it's combined with something else. What's this something else? What's this something else? Well, the officer had suspicion based on the registration and – And you already said those two aren't reasonable suspicion, and frankly, I don't think they are, because the Honda thing is more of an urban myth, and the registration – all the cars in my family are registered to my husband, but our Hispanic nanny frequently drives it to bad parts of town. Is that – it would be okay for the cops to stop her? When one adds to that the fact that the defendant did not pull over, then you get – even the Supreme Court in Hodari in the first footnote said that simply the youth in that case fleeing from the officer was perhaps enough for reasonable suspicion. Fleeing is different than just – I mean, I have to tell you, we've had instances in Los Angeles of cops who turn on their lights with single women who then have raped the women when they pull over in an isolated area. I personally would not stop if I saw a light behind me. I would drive normally, probably use my turn signals, but drive to a secure location I thought was secure, maybe the courthouse, maybe the police station. Your Honor, I understand the Court's concerns. I would like to make the point that the simple failure to pull over for a cop's signal is a violation of California law of 2800A and some other statutes that we cite in our brief, so that independently – But he didn't fail to pull over. He pulled over. He just, you know, chose a time. He wasn't fleeing. That's clear in the record. I disagree, but, Your Honor, also any of the types of reasonable suspicion that we argue independently are enough to sustain such as the second turn signal where the cop was following him two car lengths behind, and that certainly, under the California statutes, constitutes any other vehicle that might be affected. So simply, Your Honor – But there was no – I mean, the cop can't create the crime. Essentially what you're saying is the cop created the suspicion, and then he created the crime. Well, I think the defendant created the crime by not using his turn signal properly, and, Your Honor, that is a technical violation. But the law is clear that such technical violations can provide the basis for pulling over a defendant. And what the defendant wants to do here, Your Honor, is really parse the California statutes in every way to try to say, this wasn't a violation, this wasn't a violation, this wasn't a violation. But they weren't. They weren't violations. I mean, why shouldn't he argue that? I don't know. Maybe you should address your cross appeal. Okay. I would like – if there are any questions on MOTA or WANLIS, the other search issues, I would like to address them. But moving on to the cross appeal, the departure here was based essentially on two facts that are not extraordinary. One, the defendant having a family that was affected by his incarceration. And two, that he had three years of steady employment. Those facts just are not extraordinary to support the vertical departure in this case. This Court has been clear on family circumstances that what constitutes a proper departure is if the defendant is an irreplaceable caretaker for a family member. This legal proposition recognizes that defendants routinely cause their families some burdens when they're incarcerated. But it rises to the level of something that warrants a departure when there's an irreplaceable caretaker for another family member. There wasn't even an effort to prove that in this case. And, in fact, the defendant's mother lives with the family and is available to care for the children. So the defendant's in a much better position in that regard. What's the standard of review on this issue? It is de novo under the PROTECT Act, Your Honor. And this Court should find that under the facts that are presented to it here that a departure simply was not warranted. When did the PROTECT Act go into effect? In April 2003. So the sentencing here was in September 2003 after that. There was some talk in the opposing counsel's argument about the age of the principal condition of concern. When the district court mentioned that, the district court was imposing the criminal history departure. And I do agree that the age of the convictions is something that the Court can take into consideration when looking at whether a criminal history departure is warranted. But the reason why I think one was not warranted here is because, first of all, the convictions that actually got criminal history points supported the criminal history category. It wasn't even close. Second of all, there were nine convictions that were earlier and outside the time that could be counted for criminal history. And it seems like while those probably were not counted, it seems like that's certainly not a situation where departure should be warranted, where all these other convictions are not counted. What about the degree of maturity that he cited? I think that is something that the district court can consider. I'm not sure what that was based on. Here, the third thing that I would mention is the defendant had a serious alcohol problem that he admitted drinking up to 12 servings of beer every single weekend the year before the offense. And he said that his alcohol consumption was never higher than that. So rehabilitation isn't a factor to be considered? It absolutely is, Your Honor. But here there are three factors. The judge took into account that you think are permissible. There were some factors going to rehabilitation. That you think are permissible. They are permissible to take into account. But a defendant with a serious alcohol problem, and where alcohol has been involved in both of his prior violent offenses. I don't know what all has been on this case, but it was Super Bowl Sunday. Yes. You know, I'm sure you're familiar that a lot of people who don't drink, drink on Super Bowl Sunday. Your Honor, respectfully, not all of them are driving with a semi-automatic pistol with rounds of ammunition when they're convicted. I'm not saying he shouldn't have been convicted for actual possession. We're talking about two different issues, obviously. Sure. My point is simply that here he's arguing for a departure outside of the guidelines. What everyone agrees would have to be an extraordinary circumstance. And he simply does not show extraordinary rehabilitation when he has this drinking problem and when he's convicted of an offense. It's hard to say the defendant convicted of an offense is rehabilitated. You're over your time, Mr. O'Hara. I just wanted to ask you one question. He had the 1990 conviction for second-degree robbery with a knife. Is that right? That was the felony? Yes. What offenses did he have after that? He had a 1996 conviction for possession of a dangerous weapon. And he had an October 19th conviction. Do you know what that was? I'm sorry? Do you know what the weapon was? No. It's not clear in the pre-sentence report. The pre-sentence report says that it was not able to obtain the underlying information. Okay. So that's a misdemeanor conviction? I believe it was, Your Honor. Okay. And then what's after that? Is that the 1999? Yes. Conclusion of corporal injury on a child's parent. Okay. If there are no other questions from Judge Nelson or Judge Wardlaw, thank you very much, sir. Thank you, Your Honor. Mr. Libby, back to you. We'll give you, over your time, we'll give you two minutes for rebuttal. Thank you, Your Honor. Unless the Court has any further questions with respect to the suppression issue, I'd just like to focus on the departure. With respect to the departures, the government now apparently concedes that all of the  departures have been submitted. What if they are? I mean, we said de novo, don't we? Well, it's certainly, it's confusing under the perspective of what exactly de novo review now means with respect to downward departures. I would submit de novo review does not mean that this Court can substitute its judgment for that of the district court. It's not whether any of you individually or collectively would have, if in Judge Nelson's position, granted, used your discretion to grant a departure. The question is whether the facts and circumstances presented could, in any circumstance and before any judge, justify a departure. Well, de novo usually, de novo review usually applies to review of the law. So maybe I'm wrong. I don't know if there's a case on this, but I thought de novo means we see if he applied. We don't do that, the abuse of discretion, just defer to the district court anymore. We see if he, in fact, applied the correct law in exercising his discretion. Well, under the PROTECT Act, this Court still does, with respect to the district court's factual findings on downward departures, still must give substantial deference to those findings. But do we review the factual? I'm, honestly, I really don't thoroughly understand the PROTECT Act, but do we review the factual findings for clear error? You can review the factual findings for clear error. That's correct. But you're supposed to give substantial deference to them. It's the PROTECT Act is very confusing in which it's not exactly clear, in fact, what the standard of review is. But what's your best case for arguing that a de novo standard somehow requires deference to the district court decision, not factual decision, but the ultimate decision we review de novo, and you're saying we've got to do it deferentially. How does that square? Well, it's because of the confusing language in PROTECT Act. It's because of what Congress has now imposed with respect to review of downward departures. The Court says that this Court is to review de novo with respect to certain things, but is still to continue to give substantial deference to the district court with respect to other things. The findings of fact, and I believe the downward departure itself is primarily a finding of fact, and that continues to receive substantial deference. It's whether or not the facts presented can legally permit a departure is what is reviewed under the new standard, under the PROTECT Act. And here — Is there a case that you're aware of on the meaning of de novo review? No. The only cases that have addressed the PROTECT Act thus far have to do with whether or not it was — could be retroactively applied. But there have not been cases that, in fact, deal with how courts of appeals are supposed to apply the new standard of review. But here the government concedes that all of the grounds were permissible, and what Judge Feist here did was he gave a combination factor. He didn't say that family circumstances was a basis for departure. He explicitly said the family circumstances that were suggested was not sufficient to justify departure on its own. And none of the factors were sufficient to justify departure on their own. It's the unique combination of the factors presented. It's this man. He looked at this man. And Judge Feist does not easily give departures. But he looked at this man, he looked at the facts, and he said, under the unique circumstances of this case, departure is warranted. And this Court should defer to that and affirm the departure. Not review it de novo. We should defer to it and not review it de novo. Well, again, it's substantial deference on its factual findings. Thank you very much. Thank you, Your Honors. Thank you, both counsel. The matter just argued is submitted. Last case is 0350625, United States v. Burgess. Each side has 10 minutes. Let me just say that the United States v. Gonzalo Rodriguez case is submitted on the briefs, as is United States v. DiPetti-Uria.
judges: T. G. Nelson, Silverman, Wardlaw